UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA ELENA LOPEZ-RODRIGUEZ,<br><br>Plaintiff,<br><br>v.<br><br>KERN MEDICAL SURGERY CENTER,<br>LLC et al.,<br><br>Defendant. | No. 1:20-cv-01187-ADA-CDB<br><br>ORDER GRANTING IN PART AND<br>DENYING IN PART DEFENDANTS'<br>MOTION TO DISMISS PURSUANT TO<br>FED. R. CIV. P. 12(b)(6)<br><br>ORDER DENYING DEFENDANTS'<br>MOTION TO STRIKE<br><br>(ECF Nos. 7, 8) |

This matter is before the Court on Defendants' Kern Medical Surgery Center, LLC, Kern Medical Center, Kern Medical Center Foundation, Kern County Hospital Authority and Marie Ruffin ("Defendants"), motion to dismiss and a motion to strike. (ECF Nos. 7, 8.) Defendants have also filed a request for judicial notice. (ECF No. 9.) For the reasons explained below, the Court will grant, in part, and deny, in part, Defendants' motion to dismiss, deny Defendants' motion to strike, and grant Defendants' request for judicial notice.

///

///

///

///

1

# I.   **BACKGROUND**

## A.  Procedural Background

On February 24, 2020, Maria Elena Lopez-Rodriguez ("Plaintiff") filed a Complaint in the Superior Court of the State of California for the County of Kern. (ECF No. 7 at 12.) The Complaint alleged eleven (11) claims for relief against four named defendants: the Kern Medical Surgery Center ("Surgery Center"), the Kern Medical Center Foundation ("Foundation"), the County of Kern, and Marie Ruffin. (*Id.*) On May 28, 2020, the Surgery Center and Defendant Ruffin filed a demurrer and motion to strike, and, on July 6, 2020, the Foundation filed a demurrer and motion to strike. (*Id.*) On July 31, 2020, Plaintiff filed a First Amended Complaint ("FAC"), alleging thirteen (13) claims for relief and adding the Kern County Hospital Authority ("Authority") and the Kern Medical Center ("KMC"). (*Id.*) These twelfth and thirteenth claims allege Family and Medical Leave Act ("FMLA") retaliation and interference. (*Id.*)

On August 21, 2020, due to the newly pleaded federal causes of action, Defendants removed this action to this Court in accordance with 28 U.S.C. section 1441(a) under federal question jurisdiction. (ECF No. 1.) On August 27, 2020, Plaintiff and Defendants filed a stipulation to file a Second Amended Complaint ("SAC"). (ECF No. 7 at 12.) The Court approved the stipulation. (*Id.*) On September 8, 2020, Plaintiff filed a SAC. (*Id.*) Plaintiff's SAC asserts the following claims against the Surgery Center, the Foundation, County of Kern, KMC, and the Authority: Disability Discrimination (Claim 1); Failure to Provide a Reasonable Accommodation (Claim 3); Failure to Engage in the Interactive Process (Claim 4); Retaliation (Claim 5); and Failure to Prevent Discrimination, Harassment, and Retaliation (Claim 6). (ECF No. 6 at 13, 16-18, 20.) Plaintiff asserts a Disability Harassment claim against all Defendants (Claim 2). (*Id.* at 15.) As against the Surgery Center, the Foundation, and KMC, Plaintiff asserts the following claims: Retaliation for Reporting a Workplace Injury and/or Filing a Workers' Compensation Claim under California Labor Code section 6310(a) (Claim 7) and Wrongful Termination of Employment in Violation of Public Policy claim under Labor Code section 1102.5 (Claim 8). (*Id.* at 22-23.) As against the Surgery Center, the Foundation, KMC, and Marie Ruffin, Plaintiff asserts a violation of Labor Code section 1102.5 (Claim 9) and Intentional Infliction of Emotional Distress (Claim 10). (*Id.* at 24.)

Plaintiff asserts a violation of Business and Professions Code section 17200 (Claim 11) against the Surgery Center and KMC.  (*Id.* at 26.)  Lastly, Plaintiff asserts FMLA/CFRA retaliation (Claim 12) and interference claims (Claim 13) against the Surgery Center, the Foundation, County of Kern, KMC, and the Authority.  (*Id.* at 27-28.)

On September 22, 2020, all Defendants timely filed the instant motion to dismiss and motion to strike.  (ECF Nos. 7, 8.)  On October 6, 2020, Plaintiff filed oppositions to both motions, and on October 13, 2020, Defendants filed their replies to both.  (ECF Nos. 10, 11, 12, 13.)

**B.  Factual Background**

The following facts are discernable from Plaintiff's SAC.  Plaintiff's employment as a Certified Nursing Assistant ("CNA") with Defendants began on or around April 7, 2006.  (ECF No. 6 at 6.)  For approximately twelve years, Plaintiff worked for Defendants. (*Id.* at 7.)   Her job's responsibilities included obtaining and recording vitals, tending to and discharging patients.  (*Id.*)  Due to Plaintiff's education and experience, she competently performed those duties and performed her job with or without accommodation.  (*Id.* at 6.)

Around February 2015, Defendants placed Plaintiff under the supervision of Clinical Supervisor Marie Ruffin.  (*Id.*)  Defendant Ruffin assigned Plaintiff tasks outside of her job description as a CNA, including working in information technology and ordering supplies as an outpatient scheduler and eye clinic technician.  (*Id.* at 7.)  Defendant Ruffin also assigned Plaintiff the task of picking up supply orders, driving them back to the hospital, and carrying them upstairs.  (*Id.*)  Due to these tasks, Plaintiff's arthritis quickly flared up, and she began to feel overwhelmed and stressed.  (*Id.*)  Plaintiff was doing the work of multiple employees, unlike other CNAs, and Defendant Ruffin deprived Plaintiff of rest breaks.  (*Id.*)  When Plaintiff asked Defendant Ruffin why she was the only CNA who did not receive breaks, Defendant Ruffin told her that she "would not be able to complete all of her tasks."  (*Id.*)

On March 23, 2015, Plaintiff sent an email to Defendant Ruffin and Defendants' clinical director, where she mentioned her disability as rheumatoid arthritis.  (*Id.*)  She explained that her arthritis was making it "harder and harder" for her to work, including carrying and lifting boxes of supplies.  (*Id.*)  After sending the email, Defendant Ruffin spoke to Plaintiff with a demanding,

forceful, and threatening tone of voice, and often yelled at Plaintiff.  (*Id.*)  In or around the same month, Plaintiff brought to Defendant Ruffin's attention that a certain employee was left off the daily schedule.  (*Id.* at 8.)  In response, Defendant Ruffin said, "that is so gay," and Plaintiff found Defendant Ruffin's homophobic commentary offensive, harassing, and discriminatory.  (*Id.*)  Once Defendant Ruffin noticed that Plaintiff was offended, Defendant Ruffin extended her arm out towards Plaintiff's left shoulder and began stroking it in an uncomfortable and forceful way.  (*Id.*)

Shortly after March 2015, Defendant Ruffin instructed Plaintiff's co-workers to "keep an eye on [Plaintiff]" and to inform Defendant Ruffin how long Plaintiff took restroom and lunch breaks.  (*Id.*)  Once Plaintiff discovered Defendant Ruffin's instructions to her co-workers, on or around October 2, 2015, Plaintiff complained to Defendant Ruffin and asked her via email whether Defendant Ruffin would prefer Plaintiff call or text her when she goes on breaks.  (*Id.*)

Throughout 2016, Plaintiff continued to competently perform her job and all of Defendant Ruffin's commands.  (*Id.*)  Defendant Ruffin assigned Plaintiff to move heavy furniture and computers, a task outside of her job duties and in complete disregard of Plaintiff's medical condition.  (*Id.*)

On or about November 15, 2017, Plaintiff called Defendant Ruffin for clarification regarding scheduling and coverage.  (*Id.* at 9.)  After the call, Defendant Ruffin informed Plaintiff that she was "very frustrated" with her, and that it was inappropriate for Plaintiff to call her.  (*Id.*)  Plaintiff was shaken with fear due to Defendant Ruffin's aggressive demeanor and was confused why she was being reprimanded.  (*Id.*)  Defendant Ruffin told Plaintiff that she did not follow the chain of command; that she was "doing Plaintiff a favor by allowing her to work" with Defendants; and that her "job was not important in [her] book."  (*Id.*)  Afterwards, Plaintiff attempted to continue to work, but she did not know who to contact for management input.  (*Id.*)  On or about November 17, 2017, Plaintiff emailed Defendant Ruffin for clarification regarding the "chain of command."  (*Id.*)  Defendant Ruffin told Plaintiff that "was not going to email [Plaintiff] again" and that what Plaintiff did was "wrong."  (*Id.*)  Concurrently, Plaintiff was experiencing severe stress, panic, and anxiety, and she also felt lightheaded, dizzy, and hot.  (*Id.*)  As Plaintiff notified Defendant Ruffin that she was not feeling well and needed medical help, Plaintiff requested workers' compensation

4

paperwork.  (*Id.*)  Defendant Ruffin denied Plaintiff's request and refused to provide her workers' compensation paperwork, telling Plaintiff that her illness was not work related.  (*Id.*)  After seeing her personal doctor, Plaintiff's doctor placed her on medical leave of absence due to work-related stress.  (*Id.*)

On or around November 20, 2017, Plaintiff filed a formal complaint with a human resources representative, Brook Wendell, regarding Defendant Ruffin's discrimination, harassment, and retaliation towards Plaintiff.  (*Id.* at 10.)  Plaintiff complained that Defendant Ruffin refused to provide her workers' compensation paperwork during two different instances.  (*Id.*)  Plaintiff felt retaliated against for filing her complaints because all other employees who suffered their own disability were assigned to the front as greeters.  (*Id.*)  On or around December 8, 2017, Plaintiff sent an email, complaining about Defendant Ruffin's retaliation, to an unknown recipient, but no action was taken.  (*Id.*)

On or around January 2018, Plaintiff requested to be transferred to a different supervisor, but her request was denied.  (*Id.*)  On or about February 5, 2018, Plaintiff filed another complaint with Defendants' CEO, Russell Judd, alleging a hostile, discriminatory, harassing, and retaliatory work environment.  (*Id.*)  Plaintiff described missed rest breaks, her complaints to human resources that resulted in no remedial action, and her nightmares due to work-related stress.  (ECF No. 6 at 10.)

From on or around February 13, 2018, to May 7, 2018, Plaintiff took a leave of absence under the direction of her personal doctor due to work-related stress.  (*Id.*)  Plaintiff's leave of absence was extended twice, first from May 8, 2018, to May 11, 2018, and then from May 15, 2018, to June 9, 2018.  (*Id.* at 11.)  Defendants terminated Plaintiff when she informed them that her doctor recommended an additional six days of leave, from June 10, 2018, to June 16, 2018.  (*Id.*)  Defendants terminated her because Plaintiff had exhausted her leave.  (*Id.*)  Prior to filing this action, Plaintiff filed an administrative complaint with the Department of Fair Employment and Housing ("DFEH") and received a DFEH right-to-sue letter.  (*Id.* at 13.)

## II.  <u>LEGAL STANDARD</u>

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint.  *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  "Dismissal

can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Though Rule 8(a) does not require detailed factual allegations, a plaintiff is required to allege "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). It is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

### III.   DISCUSSION

**1.   The Foundation is dismissed as a defendant for all FEHA-related claims because Plaintiff did not exhaust her administrative remedies with respect to the Foundation.**

Prior to filing suit under FEHA, a plaintiff must exhaust their administrative remedies by filing a verified and adequate administrative charge of discrimination, harassment, or retaliation with the Department of Fair Employment and Housing ("DFEH") and receiving a right-to-sue letter. *See* Cal. Gov't Code § 12960 (West 2022); *see also Johnson v. City of Loma Linda*, 24 Cal.4th 61, 70 (2000). Prior to January 1, 2020, section 12960(d) provided that the DFEH charge must be filed within one year of the alleged unlawful conduct.[1] Once the plaintiff receives a DFEH right-to-sue

---

[1] As of January 1, 2020, the DFEH charge must be filed within three years of the alleged violation, or within 90 days following the expiration of the three-year period if the employee first discovered the facts of the violation after the three-year period expired. Cal. Gov't Code §12960(e). Here, the Court applies the one-year statute of limitations because Plaintiff's claim had already lapsed under the prior version of section 12960 when the three-year statute of limitations became effective. *See Streets v. Space Systems/Loral, LLC*, No. 20-CV-07901-EJD, 2021 WL 4146962 at *4-*5 (N.D.

letter, the plaintiff may file a lawsuit in court within one year. Cal. Gov't Code §12965(c)(1)(C) (West 2022). "In order to bring a civil lawsuit under FEHA, the defendants must have been named in the caption or body of the DFEH charge." *Cole v. Antelope Valley Union High Sch. Dist.*, 47 Cal.App.4th 1505, 1515 (1996). The Federal Rule of Civil Procedure 15(c) illustrates the relation back doctrine for amendments to a complaint and provides that an amendment to a pleading relates back to the date of the original pleading when:

> the amendment changes the party or the naming of the party against whom a claim is asserted . . . within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment: (i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(C).

   In their pending motion to dismiss, Defendants argue that each FEHA-related claim must be dismissed with prejudice with respect to the Foundation because Plaintiff failed to name the Foundation in her DFEH charge. (ECF No. 7 at 18.) Plaintiff's DFEH complaint dated September 18, 2020, named only the Surgery Center and Brooke Wendell in the caption, and Defendant Ruffin in its body. (*See* ECF No. 9 at 13-24.)[2] Because a DFEH complaint must be filed within one year

---

Cal. Sept. 31, 2021) (applying the three-year statute of limitations because the plaintiff's claim had not yet lapsed under the prior, one-year version); *see also Pollock v. Tri-Modal Distribution Services, Inc.*, 11 Cal.5th 918, 931 (2021) (applying the one-year statute of limitations because the alleged misconduct occurred in 2017).

[2] The Court "may take judicial notice of 'matters of public record' without converting a motion to dismiss into a motion for summary judgment." *Lee v. City of L.A.*, 250 F.3d 668, 689 (9th Cir. 2001). The Court may take judicial notice of matters that should be "generally known" or "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(f); *U.S. v. Camp*, 723 F.2d 741, 744 (9th Cir. 1984). The "incorporation by reference" doctrine permits a court to consider documents incorporated by reference, but not physically attached to the complaint, if they are central to the plaintiff's claim and no party questions their authenticity. *Grant v. Aurora Loan Servs., Inc.*, 736 F.Supp.2d 1257 (C.D. Cal. 2010). Here, Defendant requests judicial notice of the DFEH Notice of Filing of Discrimination Complaint dated September 10, 2018. (ECF No. 9 at 2.) In her complaint, Plaintiff states, "[p]rior to filing this action, plaintiff exhausted her administrative remedies by filing a timely administrative complaint with the Department of Fair Employment and Housing ("DFEH") and receiving a DFEH right-to-sue letter." (ECF No. 6 at 13.) However, Plaintiff does not attach a copy of her DFEH complaint or right-to-sue letter to her complaint. The Court grants Defendants' request for judicial notice of this exhibit under the "incorporation by reference" doctrine because

from the date of the alleged unlawful practice, Defendants argue that Plaintiff cannot file another DFEH complaint listing the Foundation as a Defendant.  Any alleged unlawful practice occurred by the date of Plaintiff's termination in or around June 2018, meaning Plaintiff must have filed the DFEH charge by June 2019.  (ECF No. 7 at 19.)  Because Plaintiff cannot cure such failure by amendment under the statute, Defendant argues that all FEHA-related claims must be dismissed without leave to amend.  They further contend that the Foundation never employed Plaintiff, meaning Plaintiff fails to allege the requisite employment relationship for FEHA.

In her opposition, Plaintiff properly alleges her claims against the Foundation under the relation back doctrine.  (ECF No. 10 at 3.)  The relation back doctrine provides a plaintiff the opportunity to untimely amend a charge under FEHA.  *Rodriguez v. Airborne Express*, 265 F.3d 890, 899-900 (9th Cir. 2001).  Plaintiff argues that the relation back doctrine permits the addition of new defendants when the plaintiff was ignorant of a defendant's identity when filing the original DFEH complaint.  *Ruberson v. Gerdau Reinforcing Steel*, No. 5:19-CV-01553-JLS-AS, 2020 WL 3891679 (C.D. Cal. Apr. 10, 2020).  Plaintiff states that she was unaware that the Foundation may be her employer at the time of filing her DFEH charge.  (ECF No. 10 at 3.)  It was not until her attorney determined that the Foundation should have been named in the DFEH complaint.  (*Id.* at 3-4.)  For the first time in her opposition, Plaintiff alleges that on February 19, 2020, she sought and obtained an amended right to sue letter, which identifies the Foundation as a respondent.  (*Id.* at 1.)  Plaintiff also alleges that she was terminated on July 10, 2018, for the first time in her opposition.  (*Id.* at 2.)  Plaintiff contends that she has not had the opportunity to conduct discovery to determine the employment relationship between Plaintiff and Defendants and between Defendants themselves, let alone her relationship with the Foundation.  (*Id.* at 4.)  Accordingly, Plaintiff argues that the Foundation should remain liable to each FEHA-related claim.

In their reply, Defendants argue that the relation back doctrine is not applicable and doing so would render the exhaustion requirement a non-requirement.  *Ruberson*, 2020 WL 3891679, at *3;

---

Plaintiff referenced the DFEH complaint and right-to-sue letter in her complaint.  Furthermore, the DFEH complaint and right-to-sue letter are central to Plaintiff's claims and no party questions the authenticity of the complaint.

(ECF No. 13 at 2.)  Defendants argue that the February 19, 2020, amendment is untimely because it surpasses the deadline to file a DFEH complaint under California Government Code section 12960(d).  They further contend that the DFEH accepting Plaintiff's untimely February 19, 2020, amendment is irrelevant.  *Rodriguez*, 265 F.3d at 898; (ECF No. 13 at 2.)  Defendants distinguish this case from *Rodriguez*, noting that *Rodriguez* concerned a new theory, rather than a new respondent.  *Id.* at 898-899.  Defendants also distinguish the instant case from Plaintiff's reliance on *Ruberson v. Gerdau Reinforcing Steel*, where the court addressed the plaintiff's attorney filing the original DFEH complaint on behalf of the incorrect complainant, not a new respondent.  2020 WL 3891679, at *3 (C.D. Cal., Apr. 10, 2020).  However, Defendants note that the cases cited in *Ruberson* address the relation back doctrine as to a new respondent.  *See Williams v. Gyrus ACMI, LP*, 2014 WL 4771667 (N.D. Cal. Sep. 24, 2014); *Ortiz v. Sodexho, Inc.*, 2011 WL 3204842 (S.D. Cal. Jul. 26, 2011).

In *Ortiz v. Sodexho, Inc.*, the court held that a complaint may not be amended to add a previously unnamed defendant after the one-year statute of limitations has run.  2011 WL 3204842, at *5.  Because the plaintiff filed the amended FEHA complaint after the statute of limitations had run, the court found that it had no legal effect.  *Id.*  In *Williams v. Gyrus ACMI, LP*, the plaintiff untimely amended the original DFEH charge to add a new defendant.  2014 WL 4771667, at *3.   The *Williams* Court applied the relation back doctrine under Rule 15 and the plaintiff did not meet the Rule's criteria.   *Id.*; *see also* Fed. R. Civ. P. 15(c)(C).   Applying *Williams* to Plaintiff's circumstances, Defendants argue that Plaintiff does not satisfy any Rule 15 criteria, which warrants dismissal of Plaintiff's FEHA claims against the Foundation.  (ECF No. 13 at 4.)  Defendants further purport that Plaintiff's amended FEHA complaint was untimely filed, so it should have no legal effect.  (*Id.*)

Here, the Court finds that Plaintiff fails to meet the administrative exhaustion requirement with respect to the Foundation.  The date of Plaintiff's termination with Defendants, July 10, 2018, is the latest possible date of the Defendants' alleged unlawful conduct.  (ECF No. 10 at 6.)  Plaintiff was thus required to file a DFEH charge by July 10, 2019.  On September 10, 2018, Plaintiff filed a timely complaint with the DFEH, but did not mention the Foundation in either the caption or body

of the complaint.  (ECF No. 10 at 6; 9 at 13-24.)  On February 19, 2020, beyond the one-year of statute of limitations, Plaintiff filed an amended DFEH complaint, adding the Foundation as a respondent.  (ECF No. 10 at 6.)

The Court finds that Plaintiff fails to demonstrate that her untimely addition of the Foundation to her DFEH complaint relates back under Rule 15(c).  Although Plaintiff's amendment asserts the same claims that arose out of the conduct set out in her original DFEH complaint, Plaintiff fails to establish the second and third elements under Rule 15(c)(C).  Plaintiff contends that she was unaware that Foundation could be her employer until her counsel's determination that the Foundation is her employer.  (ECF No. 10 at 8-9.)  However, it is unclear when Plaintiff exactly obtained counsel.   If Plaintiff obtained counsel when she initially filed her original DFEH complaint, the Court is inclined to dismiss the Foundation as a defendant with prejudice.  Plaintiff's counsel should have discovered the Foundation's possible employment relationship with Plaintiff at the time of filing the original DFEH complaint.  At this moment, Plaintiff's reasoning does not establish that the Foundation received notice of the action, so that it will not be prejudiced in defending on the merits.  *See* Fed. R. Civ. P. 15(c)(C)(i).  The reasoning neither establishes that the Foundation "knew or should have known that the action would be brought against it, but for a mistake concerning the proper party's identity."  Fed. R. Civ. P. 15(c)(C)(ii).  Because Plaintiff filed her amended FEHA complaint after the statute of limitations had run, it has no legal effect. *See Ortiz*, 2011 WL 3204842 at *5.  Therefore, the Court grants Defendants' motion to dismiss the Foundation as a defendant for all FEHA-related claims with leave for Plaintiff to amend her complaint.

**2.  Claims pursuant to California's Fair Employment and Housing Act under California Government Code §§ 12900 to 12996 (Claims 1, 2, 3, 4, 5, and 6)**

**a)  Plaintiff sufficiently alleges a physical disability.**

A physical disability is defined as a physiological disease, disorder, condition, cosmetic disfigurement, or anatomical loss that limits a major life activity, including working, and affects one or more of the systems mentioned in the code.  Cal. Gov't Code § 12926(m)(1)(A), (B) (West 2022).  A disability limits a major life activity if it "makes the achievement of the major life activity

difficult." Cal. Gov't Code § 12926(j)(1)(B), (m)(1)(B)(ii) (West 2022).  Major life activities are broadly construed and include activities that are physical, mental, or social, and working.  Cal. Gov't Code § 12926(j)(1)(C), (m)(1)(B)(iii) (West 2022).

In their pending motion to dismiss, Defendants argue that Plaintiff fails to articulate a "disability" under FEHA, meaning Plaintiff fails to meet an element for each of the following claims: Disability Discrimination (Claim 1), Disability Harassment (Claim 2), Failure to Provide a Reasonable Accommodation (Claim 3), Failure to Engage in the Interactive Process (Claim 4), and Failure to Prevent Discrimination, Harassment, and Retaliation (Claim 6). *See* Cal. Gov't Code §§ 12900 to 12996 (West 2022); (ECF No. 7 at 25.)  The Court finds that Plaintiff sufficiently alleges a cognizable disability under FEHA.

In her opposition, Plaintiff argues that she sufficiently pleads that she has a physical disability under sections 12926(m)(1) and 12926.1(c).  (ECF No. 10 at 12.)  She argues that she has identified arthritis and stress as physical disabilities, which impair her ability to work.  (ECF No. 6 at 6-7, 9, 10.)

In their reply, Defendants reiterate that Plaintiff fails to properly plead a "disability" under FEHA.  (ECF No. 13 at 6-7.)  In *Gelfo v. Lockheed Martin Corp.*, 140 Cal.App.4th 34, the court held that the plaintiff failed to make a showing of his physical injury because he admitted that, during his employment, "he no longer believed he required any medical restrictions," and he performed physical labor that did not irritate his physical condition.  *Id.* at 47.  Therefore, the court found that the plaintiff could have performed the job that his employer denied him. *Id.*  Like *Gelfo*, Defendants argue that Plaintiff effectively admitted that she "was capable of performing her job with or without accommodation" in her SAC.  (ECF Nos. 13 at 7; 6 at 6.)  In other words, Plaintiff was, at all times, able to work during her employment with Defendants.  (ECF No. 13 at 7.) According to *Maloney v. Scottsdale Ins. Co.*, 256 Fed.Appx. 29 (9th Cir. 2007), inconsistent factual allegations that are not plead in the alternative are incorporated into each cause of action.  *Id.* at 31. Defendants argue that because the SAC did not plead inconsistent factual allegations in the alternative, Plaintiff's allegations are judicial admissions.  *See* Fed. R. Civ. P. 8(e)(2); *see generally Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988).  Therefore, Defendants

1  argue that Plaintiff's contradictory allegations are all expressly incorporated into FEHA-related

2  claims, and as such, dismissal is proper.  (ECF No. 13 at 7.)

3      The Court finds that Plaintiff sufficiently pleads that she suffered a disability under FEHA

4  despite the SAC's contradictory allegations.  In her SAC, Plaintiff alleges that she "suffered from

5  a disability and/or medical condition, including rheumatoid arthritis and work-related stress."[3]

6  (ECF No. 6 at 6.)  Plaintiff describes that Defendant Ruffin assigned Plaintiff additional tasks

7  outside of her job duties as a CNA.  (*Id.* at 7.)  Afterwards, Plaintiff's "arthritis quickly flared up

8  doing these physically laborious tasks."  (*Id.*)  The Court acknowledges that Plaintiff does not

9  consistently allege that her physical disabilities made the achievement of a major life activity

10  difficult.  Plaintiff alleges that she "continued to competently perform her job and carried out any

11  stern commands that Ruffin ordered her."  (*Id.* at 8.)  At the same time, Plaintiff alleges that her

12  arthritis was making it "harder and harder" for her to perform her job responsibilities, such as

13  carrying and lifting boxes of supplies.  (*Id.* at 7.)  Rule 8(d) of the Federal Rules of Civil Procedure

14  provides that, "[i]f a party makes alternative statements, the pleading is sufficient if any one of the

15  them is sufficient."  Fed. R. Civ. P. 8(a)(2).  In other words, a plaintiff may plead two or more

16  statements of a claim, even within the same count, regardless of consistency.  *See Henry v. Daytop*

17  *Village, Inc.*, 42 F.3d 89, 94-95 (2d Cir. 1994).  Even though Plaintiff does not consistently allege

18  that her physical condition made achievement of her job responsibilities difficult, the Court finds

19  that Plaintiff adequately pleads that she suffered from a disability under FEHA.

20      **b)  Plaintiff alleges a plausible claim of Disability Discrimination (Claim 1).**

21      "A prima facie case of disability discrimination under FEHA requires the employee to show he

22  or she (1) suffered from a disability, (2) was otherwise qualified to do his or her job, and (3) was

23

---

24  [3] With respect to stress as a disability, Plaintiff alleges that she experienced "severe stress, panic,
    and anxiety" because of Defendant Ruffin's unfair reprimand and comments identifying Plaintiff

25  as being unimportant and less-than in the workplace.  (ECF No. 6 at 9.)  However, work-related
    stress is not a disability under FEHA.  *Striplin v. Shamrock Foods Co.*, 731 Fed.Appx. 618, 620

26  (9th Cir. 2018); *Kalilikole v. Palomar Comty. College Dist.*, 384 F.Supp.3d 1185, 1193 (S.D. Cal.

27  2019) (citing *Higgins-Williams v. Sutter Med. Found.*, 237 Cal.App.4th 78, 84 (Cal. Ct. App.
    2015)).  Therefore, the Court finds that Plaintiff does not adequately plead that she suffered from a

28  disability under FEHA with respect to work-related stress.

subjected to adverse employment action because of the disability." *Nealy v. City of Santa Monica*, 234 Cal.App.4th 359, 378 (2015).  The standard to determine whether an employee has been subjected to an "adverse employment action" is whether the employment action materially affected the "terms and conditions of employment," with that term being liberally construed to afford the employee appropriate protection against employment discrimination.  *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal.4th 1028, 1049 (2005).  Conduct that can contribute to a disability harassment claim includes job reassignment, demeaning comments, social exclusion, and preferential treatment of non-disabled employees.  *See Simers v. L.A. Times Commc'ns., LLC*, 18 Cal.App.5th 1248, 1279 (2018); *Roby v. McKesson Corp.*, 47 Cal.4th 686, 710 (2009).

The Court finds that Plaintiff adequately alleges that Defendants discriminated against her because of her disability.  Defendants contend that Plaintiff did not establish the requisite nexus between her disability and the adverse employment actions.  (ECF No. 13 at 7.)  However, after Plaintiff put Defendant on notice of her rheumatoid arthritis, Plaintiff contends that Defendant Ruffin spoke to Plaintiff with a demanding, forceful, and threatening tone of voice, and often yelled at Plaintiff.  (ECF No. 6 at 7.)  Plaintiff also alleges that upon notice of her disability, Defendant Ruffin assigned Plaintiff to move heavy furniture and computers, which are tasks outside of her job description.  (ECF No. 6 at 9.)  Viewing the factual allegations in the light most favorable to Plaintiff, the Court finds that Plaintiff presents a plausible claim of disability discrimination.

**c)  Plaintiff does not allege a plausible claim of Disability Harassment (Claim 2).**

To establish a disability harassment claim, a plaintiff must demonstrate that: (1) she is a member of a protected group; (2) she was subjected to unwelcome conduct because of the employee's disability; (3) the alleged conduct was severe enough or sufficiently pervasive to: (a) alter the conditions of employment; and (b) create a hostile or abusive work environment.  Cal. Gov't Code § 12940(j) (West 2022); *Caldera v. Dep't of Corrs. & Rehab.*, 25 Cal.App.5th 31, 37-39 (2018).  To identify a hostile work environment, the following circumstances are considered: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening, humiliating, or merely offensive; and (4) whether it unreasonably interferes with an employee's work performance.  *Lyle v. Warner Bros. TV Prods.*, 38 Cal.4th 264, 283 (2006).  Demeaning

comments, social exclusion, and preferential treatment of non-disabled employees may constitute conduct related to disability harassment. *Roby v. McKesson Corp.*, 47 Cal.4th 686, 710 (2009). On the other hand, common and necessary personnel management actions, such as job assignments, do not constitute harassment. *Janken v. GM Hughes Electronics*, 46 Cal.App.4th 55, 64-65 (1996).

In their motion to dismiss, Defendants state that Plaintiff "appears to suggest, but does not specify, that she was harassed because of the duties assigned to her." (ECF No. 7 at 27.) Defendants then argue that Plaintiff cannot base a harassment claim on Defendant Ruffin's scrutiny, not being transferred to another supervisor, and not being given additional leave after she exhausted her leave entitlement because they are personnel management actions. (ECF No. 7 at 27.). Defendants argue that personnel management actions, such as decisions pertaining to assignments, supervision, and the exercise of discretion in granting additional leave, are not harassment as a matter of law. (ECF No. 7 at 28.)

In response, Plaintiff argues that she properly pleads that Defendants' behavior constitutes severe and pervasive conduct. (ECF No. 10 at 16.) Plaintiff relies on *Nichol v. Azteca Rest. Enterprises, Inc.*, 256 F.3d 864 (9th Cir. 2001) to argue that "verbal abuse has long been held as sufficient basis for alleging and evidencing harassment." *Id.* at 869. There, the restaurant employees subjected the plaintiff to verbal abuse, derisively referring to the male plaintiff as "she" and "her," commenting that he walked and carried his tray "like a woman," and taunting him because he did not have sexual intercourse with his female friend. *Id.* at 874. The court held that the verbal abuse occurred because of sex, which established the plaintiff's hostile environment claims. *Id.* at 875.

Unlike *Nichols*, Plaintiff does not allege any verbal abuse directed to her because of her disability. Plaintiff alleges that Defendant Ruffin spoke to Plaintiff with a "demanding, forceful, and threatening tone of voice, and often yelled at [Plaintiff]." (ECF No. 6, at 7-8.) Plaintiff also alleges that Defendant Ruffin said "that is so gay" in response to Plaintiff's concern that a certain employee was excluded from the daily schedule. (*Id.* at 8.) However, Defendant Ruffin's statement is not related to Plaintiff's alleged disability. In response to Plaintiff's request for an accommodation, Plaintiff asserts Defendant Ruffin assigned Plaintiff tasks outside of her job

14

responsibilities.  (ECF No. 6 at 8-9.)  However, these may constitute personnel management actions, which do not constitute harassment.  *See Janken*, 46 Cal.App.4th at 64-65.

Plaintiff further asserts that there is no bright line test to determine whether conduct is severe and pervasive.  *See, e.g.*, *U.S. Equal Employment Opportunity Commission v. PC Iron, Inc.*, 316 F.Supp.3d 1221 (2018); *Brennan v. Townsend & O'Leary Enterprises, Inc.*, 199 Cal.App.4th 1336 (2011); *Fisher v. San Pedro Peninsula Hospital*, 214 Cal.App.3d 590 (1989).  In *PC Iron*, the court held that a manager's inquiry into the plaintiff's return from maternity leave and the manager's failure to immediately complete the plaintiff's childcare forms did not give rise to a hostile work environment.  *PC Iron, Inc.*, 316 F.Supp.3d at 1226.  In *Brennan*, the court held that evidence of an email between two executives referring to the plaintiff as "big-titted" and "mindless," three incidents of sexual conduct in the workplace over the course of three years, and employer's questions directed towards the plaintiff about whether she was in a relationship and sexually active were insufficient to establish severe and pervasive conduct.  *Brennan*, 199 Cal.App.4th at 1353-57.  In *Fisher*, the court held that the plaintiff's allegations of one doctor's sexual harassment cases against three nurses over the course of four years did not give rise to a hostile work environment.  *Fisher*, 214 Cal.App.3d at 612-14.  Here, the Court finds that Plaintiff's allegations of sporadic acts, occurring over a three-year period, do not fall within the parameters of what both California and federal courts consider severe and pervasive conduct.  Therefore, the Court finds that Plaintiff does not sufficiently plead severe and pervasive conduct and dismisses Plaintiff's claim of disability harassment with leave to amend.

**d)  Plaintiff alleges a plausible claim of Failure to Provide Reasonable Accommodation (Claim 3).**

Employers must provide a reasonable accommodation for a known disability of a qualified employee, unless the employer can show that the accommodation imposes an undue hardship to its operation.  Cal. Gov't Code § 12940(m)(1) (West 2022); *see Bagatti v. Dep't of Rehab.*, 97 Cal.App.4th 344, 356 (2002).  The employee bears the burden of giving the employer notice of the disability.  *Priliman v. United Air Lines, Inc.*, 53 Cal.App.4th 935, 950 (1997).  An employee is not required to use the phrase "reasonable accommodation" when requesting an accommodation.

1    *Norris v. Allied-Sysco Food Servs., Inc.*, 948 F.Supp.1418, 1437 (N.D. Cal. 1996).  Rather, the

2    employee must simply inform her employer that she has a disability that requires an

3    accommodation to perform her work duties.  *Id.*  If an employee does not directly inform an

4    employer of their need for an accommodation or disability, knowledge will be imputed only when

5    the fact of disability is a reasonable interpretation of the known facts.  *Brundage v. Hahn*, 57

6    Cal.App.4th 228, 237 (1997).

7       In their motion to dismiss, Defendants argue that Plaintiff fails to allege that she ever requested

8    such accommodation in the following instances: (1) an email Plaintiff "hoped" would result in the

9    interactive process, (2) a request for workers' compensation paperwork, and (3) a recommendation

10   for additional leave.  (ECF No. 13 at 10.)  In response, Plaintiff argues that she requested a

11   reasonable accommodation in each of those instances, contending that she did not have to use any

12   particular word and that Defendants did not need to know the name or diagnosis of the disability.

13   (ECF No. 10 at 20.)  At a minimum, Plaintiff contends that her request for medical leave pursuant

14   to her medical provider's instructions, constitutes a request for accommodation.  (*Id.*)

15      The Court finds that Plaintiff sufficiently alleges that Defendants failed to provide a

16   reasonable accommodation.  On March 23, 2015, Plaintiff sent Defendant Ruffin an email, where

17   she expressed that her arthritis was making it "harder and harder" for her to perform her job.

18   (ECF No. 6 at 7.)  Plaintiff need not use the phrase "reasonable accommodation" in her email and

19   need only inform her employer that she has a disability that requires some sort of

20   accommodation.  Subsequent to her request, Defendants failed to engage in the interactive

21   process.  Therefore, the Court denies Defendants' motion to dismiss Plaintiff's failure to provide

22   a reasonable accommodation claim.

23      **e)  Plaintiff alleges a plausible claim of Failure to Engage in the Interactive Process**

24          **(Claim 4).**

25      Employers must engage in the interactive process to determine whether an effective reasonable

26   accommodation exists for an employee's disability. Cal. Gov't Code § 12940(n) (West 2022); *see*

27   *Claudio v. Regents of the Univ. of Cal.*, 124 Cal.App.4th 224, 243 (2005).  An employer's duty is

28   triggered: (1) if an employee with a known disability requests an accommodation; (2) if the

employer observes or a third party advises that there is a need for an accommodation; or (3) if the employer becomes aware of the possible need for an accommodation because: (a) the employee has exhausted certain leave entitlements for their own serious health condition; and (b) the employee or their health care provider indicate that further accommodation is still necessary for the employee to perform the essential functions of the job.  Cal. Code Regs. Tit.2, § 11069(b) (West 2022).

Here, the Court finds that Plaintiff adequately alleges that Defendants failed to participate in the interactive process with Plaintiff.  Plaintiff triggered Defendants' duty to engage in the interactive process when she requested a reasonable accommodation.  (*See* ECF No. 6 at 7.)  Therefore, the Court denies Defendants' motion to dismiss the failure to engage in the interactive process claim.

> **f)  Plaintiff fails to allege a causal connection between the protected activity and the adverse employment action for retaliation (Claim 5).**

FEHA prohibits retaliation against any person who has requested an accommodation for a disability.  To establish a prima facie case of retaliation under FEHA, a plaintiff must show (1) she engaged in a "protected activity," (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action.  Cal. Gov't Code § 12940(m)(1) (West 2022).  "To establish causation, the plaintiff must show by a preponderance of the evidence that engaging in the protected activity was one of the reasons for the adverse employment decision and that but for such activity the decision would not have been made."  *McKenna v. Permanente Med. Grp., Inc.*, 894 F.Supp.2d 1258, 1279 (E.D. Cal. 2012).  Circumstantial evidence and a pattern of conduct consistent with a retaliatory intent may establish causation.  *Jordan v. Clark*, 847 F.2d 1368 (9th Cir. 1988); *Morgan v. Regents of Univ. of Cal.*, 88 Cal.App.4th 52, 67 (2000).

In their motion to dismiss, Defendants argue that Plaintiff vaguely alleges her engagement in protected activity, failing to identify her alleged "good faith complaints protected by FEHA."  (ECF No. 7 at 29.)  Defendants argue that Plaintiff's retaliation claim is actually a wrongful termination claim.  *See McKenna*, 894 F.Supp.2d at 1280.  In *McKenna*, the plaintiff "bundles the alleged

protected activities with termination due to medical leave." *Id.* Similarly, Defendants argue that Plaintiff's retaliation claim "is subject to dismissal given the absence of a causal connection between protected activity and adverse employment action." *Id.* In response, Plaintiff argues that protected activities under FEHA include taking actions in opposition of unlawful practices under FEHA, such as making reports and complaints of the unlawful practices and making a request for accommodation. Cal. Gov't Code §§ 12940(h), (i), (m)(2) (West 2022).

Defendants rely on *McKenna v. Permanente Medical Group, Inc.*, 894 F.Supp.2d 1258 (E.D. Cal. 2012). There, the defendants' motion to dismiss pointed to the absence of facts to support a causal link between the plaintiff's protected activity and adverse employment action, including increased work, discipline, and termination. *Id.* at 1289. The plaintiff responded that her medical condition and need for medical leave was a factor in her termination, which took place less than one week into her six-month medical leave. *Id.* The court found the plaintiff's allegations as insufficient to allege that there was a causal connection between the protected activity and adverse employment action and, therefore, dismissed her FEHA retaliation claim.

Here, the SAC identifies Plaintiff's protected activities. (ECF No. 6 at 7, 10.) Plaintiff requested a reasonable accommodation on or around March 23, 2015. (*Id.* at 7.) Plaintiff made complaints to human resources twice on November 20, 2017, and December 8, 2017, and one complaint to Defendants' CEO on February 5, 2018. (ECF No. 6 at 10.) Following the protected activity, the alleged adverse employment actions are Defendant Ruffin speaking and yelling at Plaintiff with a "demanding, forceful, and threatening tone of voice" and Defendant Ruffin assigning Plaintiff to move heavy furniture and computers. (*Id.* at 9.) Plaintiff alleges that on or around June 10, 2018, when she informed Defendants that her doctor recommended six additional days of leave, Defendants terminated her employment "in retaliation for her complaints." (*Id.* at 11.) Like *McKenna*, the SAC bundles the alleged protected activity with termination, alleging that the termination of her employment was for retaliatory purposes related to her protected activity. (*See* ECF No. 6 at 11.) Plaintiff fails to demonstrate a causal connection because, between the protected conduct and the adverse employment actions, the time periods range from months to years. The

Court finds that Plaintiff alleges a wrongful termination claim, not a retaliation claim. As such, the Court dismisses Plaintiff's retaliation claim with leave to amend.

### g) Plaintiff alleges an actionable claim of failure to prevent discrimination, harassment, or retaliation in violation of FEHA (Claim 6).

Employers and other covered entities must take "all reasonable steps" necessary to prevent discrimination or harassment under FEHA.  Cal. Gov't Code § 12940(k) (West 2022).  This duty also extends to preventing retaliation, which is a form of discrimination.  *Taylor v. City of L.A. Dep't of Water & Power*, 144 Cal.App.4th 1216, 1240 (2006), *disapproved of on other grounds by Jones v. Lodge at Torrey Pines P'ship*, 42 Cal.4th 1158 (2008).  A claim for relief for failure to prevent discrimination, harassment and retaliation is "dependent" upon a claim of "actual" discrimination, harassment, and retaliation.  *Dickson v. Burke Williams, Inc.*, 234 Cal.App.4th 1307, 1315 (2015) (citing *Scotch v. Art Inst. of Cal.*, 172 Cal.App.4th 986, 1021 (2009)).  "Without actionable discrimination, harassment, or retaliation, there is no viable section 12940(k) claim."  *Rubadeau v. M.A. Mortenson Co.*, No. 1:13-CV-339-AWI-JLT, 2013 WL 3356883, at *14 (E.D. Cal. July 3, 2013).

In their motion to dismiss, Defendants argue that because Plaintiff cannot establish that she suffered discrimination, harassment, or retaliation, she cannot maintain a claim for relief for failure to prevent such discrimination, harassment, or retaliation.  Because the Court has found that Plaintiff sufficiently alleges an actionable discrimination, harassment, and retaliation claim under FEHA, Plaintiff also sufficiently alleges a section 12940(k) claim. For these reasons, the Court denies Defendants' motion to dismiss Claim 6.

### 3. Intentional Infliction of Emotional Distress (Claim 10).

### a) Workers' Compensation Exclusivity Rule does not apply to Plaintiff's claim.

California's workers' compensation law is the exclusive remedy for workers injured on the job.  Cal. Const. Art. 14, § 4.  California employees are thus barred from pursuing claims regarding negligence against their employers to recover damages for injuries sustained on the job.  Permitting additional remedies that are already compensable under workers' compensation law "would throw open the doors to numerous claims."  *Cole v. Fair Oaks Fire Protection Dist.*, 43 Cal.3d 148, 160

1   (1987).  Generally, the workers' compensation exclusivity rule may preclude an IIED claim.  *See*

2   *Jenkins v. Fam. Health Program*, 214 Cal.App.3d 440, 449 (1989).  Conduct that is a normal part

3   of the employment relationship, such as demotions, promotions, criticism of work practices, may

4   not avoid the exclusive remedy provisions of the Labor Code when an employee suffers emotional

5   distress.  *Id.* at 449 (citing *Cole*, 43 Cal.3d at 160).  However, under limited circumstances, IIED

6   based on unlawful discrimination and retaliation in violation of FEHA are not subject to workers'

7   compensation exclusivity.  *Light v. Dep't of Parks & Recreation*, 14 Cal.App.5th 75, 101 (2017).

8       In their motion to dismiss, Defendants argue that Plaintiff's IIED claim is "precluded by the

9   'exclusive remedy' provision of the Workers' Compensation Act."  *Jenkins*, 214 Cal.App.3d at

10  449.  They contend that the SAC alleges facts that are ordinarily part of the employment relationship

11  and that Plaintiff cannot avoid workers' compensation exclusivity by characterizing ordinary

12  employment decisions as an attempt to inflict emotional distress.  (ECF No. 7 at 31.)  Defendants

13  argue that there are rare circumstances when workers' compensation exclusivity does not apply,

14  where the alleged conduct cannot be viewed as a normal aspect of an employment relationship.  An

15  IIED claim is preempted when it is based on alleged unlawful conduct at the worksite and in the

16  normal course of the employer-employee relationship.  *Miklosy v. Regents of the Univ. of Cal.*, 44

17  Cal.4th 876, 902-3 (2008).  In *Miklosy*, the court expressly rejected the plaintiff's attempts to avoid

18  workers' compensation exclusivity by alleging that whistleblower retaliation was not "a risk

19  inherent in the employment relationship."  44 Cal.4th at 903.  Therefore, Defendants argue that

20  Plaintiffs claim must be dismissed.

21      In response, Plaintiff argues that the exclusivity rule is inapplicable.  (ECF No. 10 at 22.)  "[A]

22  claim for emotional and psychological damage, arising out of employment, is not barred where the

23  distress is engendered by an employer's illegal discrimination practices."  *Accardi v. Superior*

24  *Court*, 17 Cal.App.4th 341, 352 (1993).  Plaintiff argues that the conduct underlying her IIED claim

25  is, in part, unlawful discrimination and intentionally harassing conduct by Defendants.  (ECF No.

26  10 at 22.)  The exclusivity rule does not bar a suit for emotional distress damages resulting from

27  sexual harassment, unlawful discrimination, or other misconduct that exceeds the normal risks of

28  the employment relationship.  *Livitsanos v. Superior Court*, 2 Cal.4th 744, 756 (1992).  Because

1    unlawful discrimination underlies Plaintiff's IIED claim, Plaintiff argues that her claim does not

2    fall under the exclusivity rule.

3        The Court finds that Plaintiff sufficiently alleges that Defendants acted with the purpose of

4    causing her emotional distress.  On one hand, as reasoned in *Cole*, it would be unusual for Plaintiff

5    not to suffer emotional distress in response to Defendants' unfavorable decision.   Plaintiff

6    nonetheless alleges that the conduct underlying her IIED claim is, in part, Defendants' unlawful

7    discrimination and intentionally harassing conduct against her.  (ECF No. 10 at 22.)  The Court

8    dismisses Plaintiff's claims for disability harassment but denies Defendants' motion to dismiss her

9    disability discrimination claim, which supports Plaintiff's IIED claim. The Court finds Plaintiff's

10   allegations of assignment to additional duties, Defendant Ruffin's scrutiny, refusal to transfer

11   Plaintiff to another supervisor, or provide her additional leave may be within the scope of and risks

12   inherent in the employment relationship.  However, Plaintiff still sufficiently pleads a claim that

13   falls outside of the workers' compensation exclusivity rule.

14       **b)  Plaintiff fails to plead a plausible IIED claim.**

15       The elements of IIED are: (1) extreme and outrageous conduct by the defendant with the intent

16   of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's

17   suffering severe and extreme emotional distress; and (3) actual and proximate causation of the

18   emotional distress by the defendant's outrageous conduct.  *Christensen v. Superior Court*, 54

19   Cal.3d 868, 903 (1991).   "[T]he tort does not extend to 'mere insults, indignities, threats,

20   annoyances, petty oppressions or other trivialities." *Cochran v. Cochran*, 65 Cal.App.4th 488, 496

21   (1998).  In the employment context, conduct "where plaintiff's evidence showed her supervisor

22   screamed, yelled and made threatening gestures while criticizing her job performance," or "where

23   plaintiff alleged his employer prevented him from being a union steward, transferred him from job

24   to job, wrongly denied him promotions, assigned him inappropriate job tasks, and personally

25   insulted him" is not deemed outrageous.  *Schneider v. TRW, Inc.*, 938 F.2d 986, 992-93 (9th Cir.

26   1991); *Ankeny v. Lockheed Missles & Space Co.*, 88 Cal.App.3d 531, 536-37 (1979).

27       In their motion to dismiss, Defendants argue that Plaintiff does not plead extreme and

28   outrageous conduct to establish a prima facie case for IIED.  (ECF No. 7 at 32-33.)  In response,

Plaintiff analogizes *Rulon-Miller v. IBM*, 162 Cal.App.3d 241 (1984), to her case, where the extreme and outrageous conduct included, but is not limited to, verbal harassment, sexual remarks, non-consensual touching, and termination.  (ECF No. 10 at 23.)  However, Defendant illustrates that neither *Rulon-Miller* nor any other published California case brings ordinary employment decisions within the scope of IIED.  (ECF No. 13 at 11.)  Therefore, Defendants argue that ordinary employment decisions cannot form the basis of an IIED claim.  *Cole v. Fair Oaks Fire Protection Dist.*, 43 Cal.3d 148, 160 (1987).

The Court finds that Plaintiff does not allege a plausible claim of IIED.  Plaintiff alleges that Defendant Ruffin assigned her additional tasks outside of her job description and negatively commented on Plaintiff's job performance.  (ECF No. 6 at 9.)   This conduct does not give rise to extreme and outrageous conduct.  Therefore, the Court dismisses Plaintiff's IIED claim with leave to amend.

**4.  Claims under California Labor Code §§ 1102.5 and 6310 and Business and Professions Code § 17200 (Claims 7, 8, and 9)**

**a)  Plaintiff is not required to exhaust the administrative remedies.**

In the motion to dismiss, pursuant to California Government Code sections 911.2(a) and 915, Defendants argue that KMC and the Surgery Center must be dismissed with respect to the following claims because Plaintiff fails to comply with the claim presentation requirement: Retaliation for Reporting a Workplace Injury and/or Filing Workers' Compensation Under California Labor Code Section 6310 (Claim 7), Wrongful Termination Under California Labor Code Section 1102.5 (Claim 8), Retaliation Under California Labor Code Section 1102.5 (Claim 9), IIED (Claim 10), and Business and Professions Code Section 17200 (Claim 11).  Defendants purport that KMC is a public hospital under California Health and Safety Code sections 101852(b) and 101853(c).  (ECF No. 13 at 6.)  Defendants represent that KMC is entirely owned and operated by the Authority, a public entity, and the Authority is the Surgery Center's sole member.  (ECF No. 9 at 29, 34.)[4]

---

[4] The Court takes judicial notice of the Surgery Center's operating agreement and the Authority's meeting minutes.  In her opposition, Plaintiff does not question the authenticity of Defendants' documents included in their request for judicial notice.  The Authority Board of Governors

1    Under section 911.2(a), Defendants argue that Plaintiff is required to comply with the claim

2    presentation requirement by filing a claim for damages no later than six months after her

3    employment was terminated in or about July 2018—by January 2019.  Because Plaintiff fails to

4    comply, Defendants argue that there is no possibility of amendment to cure this defect, so the

5    seventh through eleventh claims for relief must be conclusively barred with respect to Defendants

6    that are public entities and dismissed with prejudice.  (ECF No. 7 at 23.)

7        In her opposition, Plaintiff argues that neither the Kern Medical Center nor the Surgery Center

8    are public entities, and that claims against them need not comply with the Government Claims Act.

9    (ECF No. 10 at 6.)  Plaintiff argues that a private entity alleged to be owned, leased or operated by

10   a public entity is not itself a public entity for the purposes of the Government Claims Act.  *See*

11   *Lawson v. Superior Court*, 180 Cal.App.4th 1372, 1397 (2010).  Plaintiff provides that California

12   Health and Safety Code section 101852 indicates that KMC is a distinct entity in relation to the

13   Authority, and the California Secretary of State categorizes the Surgery Center as a limited liability

14   corporation.  (ECF No. 10 at 6, 7 at 13-14).

15       The Court disagrees with Defendants' argument.  In *McKenna v. Permanente Medical Group,*

16   *Inc.*, 894 F.Supp.2d 1258 (E.D. Cal. 2012), the court held that administrative exhaustion is not

17   required for a section 6310 claim.  *Id.* at 1279 (citing *Cabesuela v. Browning-Ferris Indus. of Cal.,*

18   *Inc.*, 68 Cal.App.4th 101, 109 (1998)).  Labor Code section 6312 provides that, "[a]ny employee

19   who believes that he or she has been discharged or otherwise discriminated against by any person

20   in violation of Section 6310 or 6311 *may* file a complaint with the Labor Commissioner pursuant

21   to Section 98.7."  Cal. Lab. Code § 6312 (West 2022) (emphasis added).  Therefore, Defendants'

22   motion to dismiss fails with respect to Claim 7.

23

24   ———————————————

25   Summary of Proceedings, Regular Meeting, Wednesday, August 17, 2016 are official public
     records that this Court may judicially notice.  *Fife v. Sci. Games Corp.*, No. 2:18-CV-00565-RBL,

26   2018 WL 6620485, at *3 (W.D. Wash. Dec. 18, 2018); (ECF No. 9 at 7.)  The Operating Agreement
     of Kern Medical Surgery Center, LLC, a California Limited Liability Company, dated and effective

27   as of August 18, 2016 is similar to other operating agreements of LLCs that have been granted
     judicial notice.  *Eurolog Packing Grp., North America, LLC v. EPG Indus., LLC*, 18-02982-VAP,

28   2019 WL 2949027, at *1 (C.D. Cal. Apr. 30, 2019); (ECF No. 9 at 7.)

With respect to the remainder of claims, the Court finds that Plaintiff sufficiently pleads that she has suffered plausible claims against KMC and the Surgery Center because it has not been conclusively established that they are public entities. The Authority is a "public agency that is a local unit of local government and subdivision of the state." Cal. Health & Safety Code § 101853(a) (West 2022); County of Kern, Cal., Code of Ordinances, §2.710.030(A) (2022). The Authority is the sole owner and operator of KMC and the sole member of the Surgery Center. County of Kern, Cal., Code of Ordinances, § 2.170.020(b) (2022). Upon reviewing the legislation describing each entity, the Court finds that it cannot be conclusively established that either KMC or the Surgery Center is a public entity. Thus, neither entity is required to comply with the claim presentation requirement. The Court acknowledges Defendants' attempt to distinguish the instant case from *Lawson*. Defendants argue that the complaint in *Lawson* actually alleged that the private prison worked under contract for the state and the CDCR. *Lawson*, 180 Cal.App.4th at 1397. Unlike *Lawson*, KMC and the Surgery Center are not private entities working under contract for authority. (ECF No. 13 at 6.) However, the Court is not persuaded that there may be a difference if KMC and the Surgery Center contracted with the Authority instead of being established as interrelated entities under legislation. Therefore, the Court denies Defendants' motion to dismiss with respect to the seventh through eleventh claims.

### b) There is no individual liability under Labor Code § 1102.5.

The purpose of Labor Code section 1102.5 "is to encourage workplace whistle-blowers to report unlawful acts without fearing retaliation." *United States ex rel. Lupo v. Quality Assurance Servs., Inc.*, 242 F.Supp.3d 1020, 1029 (S.D. Cal. Mar. 16, 2017), citing *Soukup v. Law Offices of Herbert Hafif*, 30 Cal.4th 260, 287 (2006). Section 1102.5 prohibits retaliation against an employee who engaged in protected activity within the meaning of the statute. However, section 1102.5 does not provide for individual liability. *Lupo*, 242 F.Supp.3d at 1030.

In the motion to dismiss, Defendants argue that Defendant Ruffin may not be sued in her individual capacity under California Labor Code section 1102.5 because the statute does not provide for such relief. On the other hand, Plaintiff argues that Labor Code section 1102.5 was specifically amended in 2013 to broaden the scope of liability to individual defendants outside of

24

the employer.  Cal. Lab. Code § 1102.5 (West 2022); (ECF No. 10 at 5.)  Plaintiff argues that courts have previously held that individual liability under section 1102.5 to be proper.  For example, in *Jackson v. Dollar Tree Distribution, Inc.*, the court stated that, "the language of § 1102.5 was amended to refer not only to an 'employer' but also 'any person acting on behalf of the employer.'" CV 18-2032 PSG, 2018 WL 2355983, at *6 (C.D. Cal. May 23, 2018).  Plaintiffs contend that the ambiguity as to whether § 1102.5 permits individual liability should be resolved in favor of the plaintiff.  *See id.*

In their reply, Defendants argue that Plaintiff erroneously relies on *Jackson v. Dollar Tree Distribution, Inc.*, 2018 WL 2355983 (C.D. Cal. May 23, 2018) and *Lewis v. Wells Fargo Bank, N.A.*, 2016 WL 7107760 (C.D. Cal. Dec. 5, 2016).  In *Bales v. County of El Dorado*, the court held that *Jackson* and *Lewis* did not determine that section 1102.5 imposes individual liability.  2:18-CV-01714-JAM-DB, 2018 WL 4558235, at *2.  The *Bales* court explained that neither the language nor the legislative history demonstrated intent to impose individual liability and concluded that "section 1102.5 does not impose individual liability."  *Id.* at *3.  In *Wilson v. City of Fresno*, the court dismissed the plaintiff's claim of retaliation in violation of section 1102.5 against individual defendants because "there is no individual liability under section 1102.5."  1:19-CV-01658-DAD-BAM, 2020 WL 5366302, at *19 (E.D. Cal. Sep. 8, 2020). Therefore, Defendants argue that this claim must be dismissed as to Defendant Ruffin.

Applying *Wilson*, the Court finds that there is no individual liability under section 1102.5. Therefore, the Court will dismiss Plaintiff's section 1102.5 claim against Defendant Ruffin for failure to state a claim and will do so with prejudice.

### c) Business and Professions Code § 17200 (Claim 11) and Wrongful Termination of Employment in Violation of Public Policy (Claim 8)

The Unfair Competition Act ("UCA") does not impose government liability.  *Trinkle v. Cal. State Lottery*, 71 Cal.App.4th 1198, 1202 (1999).  Public entities are entitled to government immunity under the UCA.  *Id.*  With respect to the wrongful termination claim under Labor Code section 1102.5, "[a] public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person."  Cal. Gov't Code §

815(a) (West 2022).  Wrongful discharge claims, otherwise known as *Tameny* actions, are common law torts.  *Tameny v. Atl. Richfield Co.*, 27 Cal.3d 167 (1980).  The California Government Claims Act bars *Tameny* lawsuits against public agencies.  *Miklosy v. Regents of Univ. of Cal.*, 44 Cal.4th 876, 899 (2008).

In their motion to dismiss, Defendants argue that the Authority, KMC, and the Surgery Center cannot be held liable for a violation of Business and Professions Code, section 17200, because the Unfair Competition Act ("UCA") does not impose government liability.  Defendants contend that the Authority, KMC, and the Surgery Center are public entities, and, therefore, argue that they are immune from governmental liability.  On the other hand, Plaintiff argues that neither KMC nor the Surgery Center are public entities, so Plaintiff is not required to comply with the Government Claims Act.  (ECF No. 10 at 12.)

As extensively discussed above, the Court finds that neither KMC or the Surgery Center are conclusively public entities, and, thus, the Court finds that Plaintiff sufficiently pleads plausible claims under the Business and Professions Code section 17200 and Labor Code section 1102.5 against KMC and Surgery Center.  However, the Court finds that the Authority is a public agency that is entitled to governmental immunity under the UCA and cannot be subject to a *Tameny* lawsuit.  Therefore, the Court dismisses Claims 8 and 11 against the Authority and will do so with prejudice.

**5.  Claims under the Family and Medical Leave Act and California Family Rights Act (Claims 12 and 13)**

Under a FMLA discrimination or retaliation claim, an employee must assert that the employer discriminated against the employee because the employee engaged in protected activity under the FMLA.  The FMLA prohibits discrimination or retaliation against an individual for exercising their FMLA rights or opposing unlawful practices under the FMLA.  29 U.S.C. § 2615(a)(2); 29 C.F.R. §§ 825.220(a)(2), (c), (e).  In a FMLA interference claim, an employee asserts that the employer denied or otherwise interfered with the employee's substantive rights under the FMLA.  29 U.S.C. § 2615(a)(1); 29 C.F.R. § 825.220.  Actions that constitute FMLA interference include refusing to authorize FMLA leave; discouraging an employee from taking FMLA leave; manipulating factors

to avoid responsibility under the FMLA; and failing to restore an employee to the same or equivalent position on the employee's return from leave.  29 C.F.R. § 825.220(b).

In the motion to dismiss, Defendants contend that Plaintiff failed to establish an employment relationship with the Foundation, which is required for Plaintiff's claims for relief under FMLA. In the opposition, Plaintiff does not address Defendants' argument with respect to the twelfth and thirteenth causes of action.

The Court finds that Plaintiff sufficiently alleges that the Foundation may be Plaintiff's employer.  Plaintiff alleges that the Foundation "directly and/or indirectly employed plaintiff, as defined under the regulations, statutes, and interpreting case law, including California Government Code section 12926(d)."  (ECF No. 6 at 4.)  Plaintiff further alleges that "[a]ll actions of all defendants were taken by employees, supervisors, executives, officers, and directors during employment with all defendants, on behalf of all defendants, and engaged in ratified, and approved of the conduct of all other defendants."  (*Id.*)  The Court does not find Defendants' argument to dismiss Plaintiff's claim persuasive.  Because Plaintiff sufficiently alleges her employment relationship with the Foundation, Defendants' motion to dismiss Claims 12 and 13 is denied.

## 6.  Leave to Amend

Generally, "[c]ourts are free to grant a party leave to amend whenever 'justice so requires,' and requests for leave should be granted with 'extreme liberality.'"  *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 972 (9th Cir. 2009).  There are several factors a district court considers when deciding whether to grant leave to amend, including undue delay, the movant's bad faith or dilatory motive, repeated failure to cure deficiencies by previously allowed amendments, undue prejudice to the opposing party, and futility.  *Brown v. Stored Value Cards, Inc.*, 953 F.3d 567, 574 (9th Cir. 2020) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  Of the *Foman* factors, the court should particularly consider prejudice to the opposing party.  *Id.*; *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

Applying the second and fifth *Foman* factors to this case, the Court finds that Plaintiff has not acted in bad faith and that it would not be futile to grant another opportunity to cure deficiencies in the complaint.  Regarding the third factor, the Court notes that, while Plaintiff has already filed an

amended complaint, it appears those amendments have come from meeting and conferring with Defendants.  (ECF No. 4.)  For future motions, the Court directs the parties to meet and confer prior to filing any motions, pursuant to the Court's Standing Order in Civil Actions.  E.D. Cal. S.O. J. de Alba at 2.  Additionally, the parties must include in their motions "a declaration that the parties exhausted meet and confer efforts, with a very brief summary of said efforts."  *Id.*  Finally, considering the first and fourth factors, the Court recognizes that this matter was filed over two years ago, and that Defendants filed their motion to dismiss on September 22, 2020.  The substantial delay in this case has likely prejudiced both parties, but that delay is attributable to the Court alone.  The Court cannot permit its overcrowded docket to result in the dismissal, with prejudice, of potentially meritorious claims.  Plaintiff will, therefore, be granted leave to amend the complaint to address the deficiencies noted in this order.

### 7.    Motion to Strike

Under Federal Rule of Civil Procedure 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  Here, Defendants contend that the allegations with respect to Plaintiff's relationship with Defendants are redundant, immaterial, impertinent, or scandalous matter.  (ECF No. 8 at 2.)  The Court finds that the category of "impertinent" is the most fitting for Defendants' motion.

"Impertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question."  *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010) (quoting 5C Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1382 (3d ed.)).  In their motion to strike, Defendants argue that the Foundation is a separate and distinct legal entity from the Authority, KMC, and the Surgery Center, and never had any employment relationship with Plaintiff.  (ECF No. 8 at 13.)  They contend that Plaintiff does not set forth any facts to support her allegation that she was "directly and/or indirectly employed" with the Foundation.  (*Id.*)  Because the Court finds that Plaintiff sufficiently alleges that the Foundation is her employer in the SAC, the Court denies Defendants' motion to strike.

///

///

## IV.   CONCLUSION AND ORDER

Accordingly,

1. Defendants' motion to strike is DENIED;

2. Defendants' motion to dismiss Claims 1, 3, 4, 6, 7, 8, 9, 11, 12, and 13 is DENIED;

3. Defendants' motion to dismiss Claims 2, 5, and 10 are GRANTED;

4. Defendants' motion to dismiss Claim 9 against Marie Ruffin is GRANTED;

5. Defendants' motion to dismiss Claims 8 and 11 against the Authority is GRANTED;

6. The Foundation is dismissed as a defendant for Claims 1, 2, 3, 4, 5, and 6, without prejudice; and

7. Plaintiff is granted leave to amend the SAC and may file the Third Amended Complaint within twenty-one (21) days of service of this order.


IT IS SO ORDERED.

Dated:   December 22, 2022

UNITED STATES DISTRICT JUDGE

29